Elaine T. Byszewski (SBN 222304)
HAGENS BERMAN SOBOL SHAPIRO, LLP
700 South Flower Street, Suite 2940
Los Angeles, CA  90017
Tel: (213) 330-7149
Fax: (213) 330-7152
Email: Elaine@hbsslaw.com

*Liaison Counsel for Lead Plaintiff Sasco Investments, LP*

Kim E. Miller (SBN 178370)
KAHN GAUTHIER SWICK, LLC
12 E. 41st St., Suite. 1200
New York, NY  10017
Tel: (212) 696-3730
Fax: (504) 455-1498
E-mail:  kim.miller@kgscounsel.com

Lewis S. Kahn
KAHN GAUTHIER SWICK, LLC
650 Poydras St., Suite 2150
New Orleans, LA 70130
Tel: (504) 455-1400
Fax: (504) 455-1498
E-mail: lewis.kahn@kgscounsel.com

*Lead Counsel for Lead Plaintiff Sasco Investments, LP*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| In re:  U.S. AUTO PARTS NETWORK INC. SECURITIES LITIGATION, | Master File No.:  07-CV-02030 GW-(JCx) |
| | <u>CLASS ACTION</u> |
| | MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; DIRECTING NOTICE OF PENDENCY AND SETTLEMENT OF CLASS ACTION; AND SETTING HEARING DATE FOR FINAL APPROVAL OF SETTLEMENT AND FOR CERTIFICATION OF SETTLEMENT CLASS |
| | Date:  June 2, 2008<br>Time:  8:30 a.m.<br>Crtrm: 10 [Hon. George H. Wu] |

MEMORANDUM OF LAW IN SUPPORT OF LEAD
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT;

## I.    INTRODUCTION

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Lead Plaintiff Sasco Investments, LP ("Lead Plaintiff" or "Plaintiff") respectfully submits this memorandum of points and authorities in support of its Motion for Preliminary Approval of Settlement; Directing Notice of Pendency and Settlement of Class Action; and Setting Hearing Date for Final Approval of Settlement and for Certification of Settlement Class (the "Motion"). This settlement is made between Lead Plaintiff on behalf of the Class and all Defendants.[1]

## II.    BACKGROUND

This is a putative class action brought on behalf of the following Class: all Persons who purchased common stock of U.S. Auto pursuant to its February 9, 2007 Initial Public Offering ("IPO" or the "Offering") of 10 million shares of common stock, defined for purposes of this settlement as purchasers between February 9, 2007 and March 20, 2007 ("the Class"). Excluded from the Class are Defendants, members of the immediate families of the Individual Defendants, current or former directors and officers of U.S. Auto and the legal representatives, heirs, successors, or assigns of any such excluded Person.   Also excluded from the Class are those Persons who timely and validly request exclusion from the Class pursuant to the Notice of Pendency and Proposed Settlement of Class Action. *See* Stipulation, ¶1.4.

---

[1] The Defendants are U.S. Auto Parts Network, Inc., Sol Khazani, Mehran Nia, Richard E. Pine, Frederic W. Harman, Robert J. Majteles, Ellen F. Siminoff, and Michael J. McClane, RBC Capital Markets Corporation, Thomas Weisel Partners LLC, Piper Jaffray & Co., JMP Securities LLC, and Oak Investment Partners XI, LP.

- 2 -

On and after March 28, 2007, the following actions were filed in the United States District Court for the Central District of California, Western Division, as securities class actions on behalf of purchasers of the publicly-traded securities of U.S. Auto Parts Network, Inc. ("U.S. Auto" or the "Company") during a defined period of time:

| CASE NAME | CASE NUMBER |
| --- | --- |
| *Johnson v. U.S. Auto Parts, et al.* | 2:07-cv-02030-GW-JC |
| *Nopper v. U.S. Auto Parts, et al.* | 2:07-cv-02775-GW-JC |

On May 15, 2007, the Court consolidated the above cases as *In re U.S. Auto Parts Network, Inc.,* 2:07-cv-02030. On August 16, 2007, the Court appointed Sasco Investments, LP as Lead Plaintiff pursuant to §21D(a)(3)(B) of the Securities Act of 1933 (the "Securities Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and approved its selection of Kahn Gauthier Swick, LLC ("KGS") as Lead Counsel in the consolidated action (the "Litigation").

On September 5, 2007, a competing lead plaintiff movant that was not appointed moved to intervene pursuant to Federal Rule of Civil Procedure 24. On September 24, 2007, Lead Plaintiff filed a non-opposition to the motion to intervene. On September 25, 2007, the motion to intervene was withdrawn.

In anticipation of filing a consolidated amended pleading, Lead Plaintiff conducted an intensive investigation and filed the operative complaint in the Litigation, the Amended Consolidated Class Action Complaint for Violation of

Federal Securities Laws (the "Complaint"), on October 4, 2007.

The Defendants named in the Complaint are: U.S. Auto Parts Network, Inc. ("the Company"); Sol Khazani, Chairman of the Company's Board and co-founder of the Company during the relevant time period; Mehran Nia, President, CEO, and Director of the Company and a member of the Board of Directors during the relevant time period; Richard Pine, Vice President of Strategic Planning and Director for the Company during the relevant time period; Company board members Frederic W. Harman, Robert J. Matjeles, and Ellen F. Siminoff; and Michael J. McClane, CFO, Executive Vice President of Finance, and Treasurer of the Company during the relevant time period (collectively, "the Individual Defendants"); Oak Investment Partners XI, LP ("Other Controlling Defendant"); and RBC Capital Markets Corporation, Thomas Weisel Partners, LLC, Piper Jaffray & Co., and JMP Securities LLC (collectively, the "Underwriter Defendants).

The Complaint alleges violations of Sections 11, 12 and 15 of the Securities Act on behalf of a class of all purchasers of the publicly-traded securities of U.S. Auto between February 9, 2007 (the date of the Company's Initial Public Offering ("IPO")) and March 20, 2007, inclusive (the "Class Period"). The Complaint alleges that at the time of the IPO there existed adverse conditions which were not disclosed in the IPO Registration Statement and Prospectus and which adversely affected the Company.

The Complaint alleges that the Company had failed to properly integrate the

recently-acquired ThePartsbin.com, Inc. ("Partsbin"), which used a very different system to conduct business. ¶¶37-38.[2] The companies' systems were not cross-connected and orders had to be entered manually, the Company stocked inventory in warehouses and used live salespersons to process orders while Partsbin had no inventory and no sales personnel to process orders. ¶¶42, 38-39. The Company could not assimilate Partsbin's drop-ship order fulfillment system or Partsbin's diverse business culture and operations. ¶¶38-39.

The Complaint further alleges that the Company was also unable or failed to fill customer orders, to keep the online catalogue information current, or to retain key employees from Partsbin's catalog department that were crucial to successfully integrating the two companies and ensuring that the dual order fulfillment methods were working properly and had oversight by trained personnel. Inventory was often not available or was priced differently than advertised. ¶¶43-47. Partsbin sent customers incomplete or incorrect orders to prevent the issuance of customer credits and erected obstacles to obtaining those credits. Revenues were inflated as a result of customer cancellations for improperly filled orders. *Id.*

The Complaint alleges that the Company also failed to disclose substantial credit risks associated with Partsbin's drop-ship order fulfillment system, under which Partsbin was responsible for paying the third-party vendors, who shipped the

---

[2] For this section only, all references to ¶__ are to the Amended Consolidated Class Action Complaint for Violations of Federal Securities Laws.

orders directly, whether or not the customer payment came through. ¶¶48-49. Partsbin faced inventory risks because returned parts were sent directly to Partsbin, and not to the vendors. Partsbin risked receiving thousands of dollars of returned merchandise daily with no adequate control or ability to predict inventory return levels.  In addition, Plaintiff alleges that Partsbin also had credit programs which inflated revenue reporting by unnecessarily delaying the issuance of customer credits through a complicated multi-step process, not disclosed to customers, through which customers must go to obtain credits. ¶¶50-58.

The Complaint alleges that the Company also failed to disclose materially decreased profit margins and revenues in the period leading up to the IPO, (¶¶59-60) material control deficiencies which operated to prevent minimum standards of good corporate governance or controls and procedures, as required by the Securities Exchange Commission ("SEC") and the Company's own internal guidelines and standards of business conduct. ¶¶61-63. And, at the time of the IPO, Defendants had not conducted an adequate due diligence into the Company or the recently-acquired Partsbin. ¶62.

Further, the Complaint alleges the Company failed to maintain adequate staff to address customer complaints and other issues, in spite of letters from the Better Business Bureau, complaints from attorneys, and complaints from Attorneys General of various States. ¶¶64-71. The extremely high volume of Partsbin customer complaints involving failure of Partsbin to issue credits for returned or cancelled or

wrong merchandise and the lack of an adequate procedure or control mechanism at Partsbin to deal with and adequately address the issues arising therefrom or any adequate control, were omitted from the Prospectus. ¶69.

The Complaint alleges that the Company also made material misstatements as to its business plan, growth strategy, and the state of the integration of Partsbin. ¶¶72-75. The statements failed to reflect the Company's failure to integrate, its inability to properly fill customer orders, or its inability to keep its crucial online catalogue updated. The Company stated that customers experienced tangible benefits from the Company's business model and operations solutions, when in fact the adverse conditions at the Company prevented any such benefits from being realized. ¶¶76-79. The Complaint further alleges that the IPO also contained untrue statements about the Company's order fulfillment system, available inventory, and reserve for returns, statements which were for the reasons discussed above. ¶¶80-81. Additionally, the Company failed to maintain adequate technology and management systems, contrary to statements in the Prospectus and Registration Statement touting the Company's technological competencies. ¶¶82-83.

The Complaint alleges that the Company also suffered from numerous GAAP and SEC regulation violations by failure to adequately disclose, despite SEC requests that the Company do so, the issues regarding Partsbin integration, the Company's revenue recognition policies, the Company's true return and credit policies, and the Company's inventory and order fulfillment issues. ¶¶84-110. The Prospectus and

Registration Statement also failed to adequately disclose the internal control issues at the Company, issues which prevented the Company from being able to assure strict compliance with its internal guidelines for accounting, financial reporting and forecasting - including its use of estimates. ¶¶111-114.

On March 20, 2007, after Defendants announced results for the fourth quarter and full year 2007 that were well below plan, over 18.33 million shares of U.S. Auto Parts traded, more than 1.8 times the number of shares sold in the IPO, and the stock subsequently fell over 50%. The Complaint alleges that upon the publication of this news, the true undisclosed negative conditions that existed at the time of the February 2007 IPO, and that continued to adversely impact the Company after that time, came to light. As this adverse information became known to investors, the artificial inflation was immediately eliminated from U.S. Auto Parts' share price, and Class members who purchased in the IPO or traceable thereto were damaged as a result of this related share price decline.

On October 31, 2007 the Company and Individual Defendants moved the Court to dismiss the Complaint. That same day, the Underwriter Defendants filed a joinder thereto. In their motion to dismiss, Defendants argued that the Complaint's allegations sounded in fraud and were therefore subject to—and failed to meet—the requirements of Fed. R. Civ. P. 9(b), which requires allegations of fraud to be pleaded with particularity. Defendants also argued that the Complaint failed to allege actionable misstatements or omissions by Defendants; that Plaintiff failed to allege

adequately that the alleged misstatements and omissions had caused Plaintiff's losses; and that Plaintiff failed to adequately allege control person liability against Oak Investment Partners XI, LP ("the Other Controlling Defendant"). Defendants concluded that these arguments together rendered Plaintiff's allegations in the Complaint legally insufficient, and on that basis moved the Court to dismiss the Complaint pursuant to Fed. R. Civ. Pr. 9(b) and 12(b)(6).

On November 27, Lead Plaintiff filed its memorandum of law in opposition to Defendants' motion to dismiss, responding to each of Defendants' arguments. Plaintiff contended that the allegations Complaint sounded in negligence, not in fraud, and that, therefore, the pleading requirement was that of Fed. R. Civ. P. 8, not the stricter requirements of 9(b). Plaintiff also argued that should the Court find that the allegations sounded in fraud, that Plaintiff had complied with the requirements of 9(b) by alleging the what, where, when, who, and why false of each statement or omission. Plaintiff further argued that actionable misstatements or omissions by Defendants in the IPO were adequately pled; that such alleged omissions had caused Plaintiff's losses; and that Plaintiff adequately alleged control person liability against Oak Investment Partners XI, LP. Plaintiffs concluded that the allegations in the Complaint were therefore legally sufficient, and that Defendants' motion to dismiss should be denied.

On December 13, 2007 Defendants filed their reply memorandum of law in further support of their motion to dismiss the Complaint, and the next day the

Underwriter Defendants filed a Joinder to that reply.

A hearing on the motion to dismiss was initially set for December 20, 2007. Pursuant to a scheduling stipulation filed by the parties, the Court continued to February 4, 2008 in order to permit the parties to conduct a mediation.

On January 30, 2007, Lead Counsel, and Counsel for the Company and the Individual Defendants met in Newport Beach, California to mediate the case before a retired United States District Judge, the Honorable Layn R. Phillips.  At that time, the parties reached an agreement in principle to settle the Litigation. On February 4, 2008, the Court ordered the Hearing on the Motion to Dismiss continued to April 7, 2008 in light of the Parties' agreement in principle.

On or about February 8, 2008, Defendants produced relevant emails from the files of the Chief Financial Officer, Controller, Director of Finance and Sarbanes-Oxley Manager and Excel spreadsheets and other attachments to the emails. On March 27, 2008, documents from the Underwriter Defendants were produced. Lead Counsel carefully reviewed and analyzed all documents in order to confirm the fairness, reasonableness, and adequacy of the proposed settlement. In total, more than 60,000 pages of documents were produced by Defendants.

### III.    ARGUMENT

**A.    Standard of Review**

Settlements are highly favored and encouraged by the courts. *See, e.g., United Airlines, Inc. v. McDonald*, 432 U.S. 385, 401 (U.S. 1977). It is also well established

that there is an overriding public interest in settling and quieting litigation, which is particularly true in complex class action suits, partly because they are so expensive to litigate. *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976), citing *Williams v. First Nat'l Bank*, 216 U.S. 582, 594 (U.S. 1910).

Indeed, the promotion of fair, adequate and reasonable settlements is a fundamental tenet of litigation in the federal courts. See, e.g., *Nelson v. Bennett*, 662 F. Supp. 1324, 1334 (E.D. Cal. 1987); *McDermott, Inc. v. Amclyde*, 511 U.S. 202, 211 (U.S. 1994). The Fifth Circuit, among others, has succinctly summarized the underlying principles:

> The very uncertainty of outcome in litigation, as well as the avoidance of wasteful litigation and expense, lay behind the congressional infusion of a power to compromise. This is a recognition of the policy of the law generally to encourage settlements.

*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 212 (5th Cir. 1981), *cert. denied* 456 U.S. 998 *and* 456 U.S. 1012 (1982). This policy applies with particular force to class action lawsuits, due to their unusual complexity and expense. *See, e.g., Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 307 (7th Cir. 1985); *Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 281 (S.D.N.Y. 1993) ("Securities class action litigation is 'notably difficult and notoriously uncertain'") (citations omitted). As a leading authority on class action litigation has explained: "Settlement of complex litigation is encouraged by the courts and favored by public policy.[3] Securities suits

---

[3] Internal footnote citing: *Mashburn v. National Healthcare, Inc.*, 684 F. Supp. 660 (M.D. Ala. 1988) (citing Newberg on Class Actions (2d ed.)); *Stull v. Baker*, 410 F.

readily lend themselves to compromise, because of the notable unpredictability of result and the potential for litigation spanning up to a decade or more." 7 Conte & Newberg, *Newberg on Class Actions* §22.91 at 386-387 (4th ed. 2002)(internal footnote omitted).

According to the Manual for Complex Litigation, the process for approving a settlement in the class action context is as follows:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation… Once the judge is satisfied as to the certifiability of the class and the results of the initial inquiry into fairness, reasonableness, and adequacy of the settlement, notice of a formal Rule 23(e) hearing is given to the class members.

*See* Manual for Complex Litigation §§21.632-21.633 at 320-321 (4th ed. 2004).

Preliminary approval of a class action settlement does ***not*** require the Court to make a final determination that the settlement is fair, reasonable and adequate. Rather, that decision is made only at the final approval stage, after notice of the settlement has been given to the class members and they have had an opportunity to voice their views of the settlement or to exclude themselves from the settlement. *See* 5 James Wm. Moore, *Moore's Federal Practice* 23.83[1], at 23-336.2 to 23-339 (3d ed. 2001). Thus, in considering a potential settlement, the Court need not reach any

---

Supp. 1326, 1332 (S.D. N.Y. 1976) ("The courts, as well as the law, favor the compromise of disputed claims."); *Jamison v. Butcher and Sherrerd*, 68 F.R.D. 479 (E.D. Pa. 1975) (Litigation settled on terms agreeable to all parties is to be encouraged; a court should disapprove a settlement only with considerable circumspection. *See also Rosenfeld v. Black*, 336 F. Supp. 84, 87 (S.D.N.Y. 1972) (derivative suit); *Feder v. Harrington*, 58 F.R.D. 171, 174 (S.D.N.Y. 1972); *Siegel v. Realty Equities Corp.*, 1973 U.S. Dist. LEXIS 12499 (S.D.N.Y. 1973).

ultimate conclusions on the issues of fact and law which underlie the merits of the dispute. *Detroit v. Grinnell Corp.*, 495 F.2d 448, 456 (2d Cir. 1974). As the Ninth Circuit aptly noted in *Officers for Justice*:

> [T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits.  Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.  The proposed settlement is not to be judged against a hypothetical or speculative measure of what ***might*** have been achieved by the negotiators.

*Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). (citations omitted, emphasis in original). At this stage, preliminary approval is merely the prerequisite to giving notice so that "the proposed settlement… may be submitted to members of the prospective class for their acceptance or rejection." *Philadelphia Hous. Auth. v. Am. Radiator & Standard Sanitary Corp.*, 323 F. Supp. 364, 372 (E.D. Pa. 1970).

The proposed Settlement satisfies the standard for preliminary approval as it is within the range of possible approval and there are no grounds to doubt its fairness and adequacy.

**B.     Terms of the Settlement and Proposed Schedule of Events**

The Settling Parties have entered into an agreement which resolves the Litigation as to all Defendants. The Settlement provides for a benefit to the Settlement Class in the amount of Ten Million Dollars ($10,000,000) in cash. *See*

Stipulation, ¶2.1. If the Court grants this Application, it will be necessary to set a hearing date for final approval of the Settlement. *See* Stipulation, Exhibit A, Order Preliminarily Approving Settlement and Providing for Notice (the "Notice Order"). The Settling Parties recommend that the Court select a final hearing date that provides enough time for the Notice to be disseminated to the Settlement Class, to receive any comments concerning the Settlement from the Members of the Settlement Class and for Plaintiffs' counsel to submit their papers in support of final approval of the Settlement as well as for reimbursement of fees and expenses.

Once the Notice Order has been signed, the following schedule will be established regarding key events pertaining to the proposed Settlement:

**C.      After Signing of the Notice Order:**

| Ten business days: | Defendants provide the Claims Administrator with a list of record holders of US AUTO common stock purchased or acquired during the Class Period. |
|---|---|
| Ten days: | ***Within*** ten days, Defendants shall serve CAFA notice.[4] |
| Fourteen days: | Notice of Pendency mailed to identifiable Members of the Class. |
| Twenty-one days: | Publication of Summary Notice. |
| 120 days: | Proof of Claim forms must be postmarked. |

**Prior to Final Settlement Hearing:**

| Fourteen days: | Objections must be served, exclusions must be postmarked. |
|---|---|
| Seven days: | Final Settlement and Fee and Expense Briefs must be filed and served. |

This schedule is similar to those used and approved by numerous courts in

---

[4] *See* Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1711 *et seq.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

class action settlements and provides due process to Settlement Class Members with respect to their rights concerning the Settlement. *See Torrisi v. Tuscon Elec. Power Co.*, 8 F.3d 1370, 1374-1375 (9th Cir. 1993).

**D.      Benefits of the Settlement**

The ability to avoid the risk expense, complexity, and likely duration of further litigation, as well as the risk of maintaining class action status throughout trial, should be considered in reviewing this Application. Plaintiffs also submit herewith as Exhibit B a Declaration of Mediator Honorable Layn R. Phillips in support of the settlement

It is well settled that "[t]he risks of litigation are what ultimately leads to settlement." *Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 215 (S.D.N.Y. 1992) (citations omitted). While Plaintiff believes that the claims against Defendants in this lawsuit have merit, experience shows that success in litigation can never be deemed a certainty. *See West Virginia v. Chas Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("no matter how confident one may be of the outcome of litigation, such confidence is often misplaced."), *aff'd*, 440 F.2d 1079 (2d Cir. 1971)*, cert. denied*, 404 U.S. 871 (1971).

Lead Plaintiff and Lead Counsel recognize the significant risks and uncertainty involved in pursuing Plaintiff's claims against Defendants through summary judgment, trial, and subsequent appeals. *See, e.g., Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 308 (2d Cir. 1979) (reversing $87 million

1  judgment after trial), *cert. denied*, 444 U.S. 1093 (1980); *Trans World Airlines, Inc.*

2  *v. Hughes*, 312 F. Supp. 478 (S.D.N.Y. 1970), *modified by*, 449 F.2d 51 (2d Cir.

3

4  1971), *rev'd*, 409 U.S. 363 (1973) (overturning $145 million judgment after years of

5  appeals). Moreover, Lead Plaintiff and Lead Counsel are mindful of the many

6
   problems of proof under, and possible defenses to, the securities law violations
7

8  alleged.

9       Under these circumstances, the proposed Settlement recognizes such inherent

10  risks, costs and delay associated with the prosecution of complex cases as to all

11
    parties. Thus, the benefits created by the Settlement weigh in favor of granting the
12

13  Application.

14  **E.     The Settlement Is Presumed To Be Fair and Reasonable as it Was the
15          Result of Arm's-Length Negotiations**

16       There is an initial presumption that a proposed settlement is fair and reasonable

17  when it is the result of arm's-length negotiations.  *See Williams v. Vukovich*, 720

18
    F.2d 909, 922-923 (6th Cir. 1983) ("The court should defer to the judgment of
19

20  experienced counsel who has competently evaluated the strength of his proofs"); *In*

21  *re Excess Value Ins. Coverage Litig.*, No. M-21-84, 2004 U.S. Dist. LEXIS 14822, at

22
23  *34 (S.D.N.Y. July 30, 2004) ("Where 'the Court finds that the settlement is the

24  product of arm's length negotiations conducted by experienced counsel

25  knowledgeable in complex class litigation, the settlement will enjoy a presumption
26
27  of fairness'"); *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359, 380 (N.D.

28

Ohio 2001) (granting preliminary settlement approval) ("when a settlement is the result of extensive negotiations by experienced counsel, the Court should presume it is fair"). *See also* 2 Herbert Newberg & Alba Conte, *Newberg on Class Actions* §11.41 at 11-88 (3d ed. 1992); Manual For Complex Litigation (Third) §30.42. Thus, many courts recognize that the opinion of experienced counsel is entitled to considerable weight in evaluating the fairness of a settlement when the result was achieved through arm's length negotiations. *Kirkorian v. Borelli*, 695 F.Supp. 446, 451 (N.D. Cal. 1988); *Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983).

  As the discussion above indicates, the proposed Settlement is the product of thorough arm's length negotiations that occurred between counsel commencing early in the litigation and continuing through January 30, 2008, when an agreement in principle was reached. The Settlement was also reached at a point where Lead Plaintiff had a solid understanding of the strengths and weaknesses of their claims. Lead Plaintiff's counsel conducted an extensive investigation with the assistance of private investigators and other consultants. In addition, significant relevant information was publicly available and thoroughly analyzed by Lead Counsel. Furthermore, Lead Counsel has conducted a thorough review of the discovery documents produced by Defendants subsequent to mediation which confirmed the fairness, reasonableness, and adequacy of the settlement.

  As a result of the negotiations, the Parties, who were represented by counsel

with significant experience in class action litigation, reached an agreement which they believe is fair to the Parties, as well as the proposed Settlement Class. *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, MDL Docket No. 901 (All Cases), 1992 U.S. Dist. LEXIS 14337, at *8 (C.D. Cal. June 10, 1992) (finding belief of counsel that the proposed settlement represented the most beneficial result for the class to be a compelling factor in approving settlement); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) (recommendations of plaintiffs' counsel should be given a presumption of reasonableness).

Nothing indicates that the Settlement is not the product of informed and non-collusive negotiations among experienced counsel, and it is therefore deserving of preliminary approval.

**F.      The Stage of the Proceedings Supports Preliminary Approval of Settlement**

**1.      Pretrial Proceedings**

**a.      Investigation, and Research**

Prior to and during the Litigation, Lead Plaintiff's Counsel conducted an extensive investigation concerning this matter. These efforts included, but were not limited to: (a) a review and analysis of U.S. Auto's SEC filings and public disclosures, including an analysis of the Company's financials during the relevant period; (b) utilizing the services of a private investigator and interviewing witnesses with knowledge concerning the allegations in the pleadings; (c) consultation with damage consultants; (d) research of the applicable law with respect to the claims

asserted in the pleadings and Defendants' potential defenses thereto; and (e) thorough review of produced confirmatory discovery documents.

Thus, as a result of the foregoing, Plaintiff believes that the action reached a stage where "the parties certainly [had] a clear view of the strengths and weaknesses of their cases." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F. 2d 939 (9th Cir. 1981). In addition, only after Lead Plaintiff's Counsel demonstrated their commitment, willingness and ability to prosecute the case vigorously, was a Settlement reached for $10,000,000 in cash. Therefore, the Court should find that this factor weighs in favor of granting preliminary approval of the Settlement.

**G.    Certification of Settlement Class**

  **1.    Standards for Class Certification**

Since a class has not been certified in this case, the Parties also request that the Court provisionally certify a shareholder class for settlement purposes only. While each of the class action requirements of Rule 23 of the *Federal Rules of Civil Procedure* must be satisfied when certifying a class for the purposes of settlement, the proposed Settlement must be taken into account as part of the overall analysis. *Amchem Prods. v. Windsor*, 521 U.S. 591 (1997). In fact, courts throughout the country have granted similar requests since the criteria for class certification may be easily met when the class has an overriding common interest in obtaining the

recovery proposed by a settlement. *Id.* Certain courts have even noted that "the temporary settlement class [is] nothing more than a tentative assumption indulged in by the court to facilitate the amicable resolution of the litigation, rather than as some sort of conditional class ruling under Rule 23 criterion." *See In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 177 (5th Cir. 1979) ("A number of trial judges, experienced in complex litigation, have found it appropriate to establish a pre-certification settlement class"). Accordingly, doubts as to whether or not to certify a class action should be resolved "in favor of allowing the class to go forward." *Amchem,* 521 U.S. at 591. In determining class certification, "the question is not whether the plaintiff or plaintiffs . . . will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974)) ("*Visa II*").[5]

This request is supported by the nature of the claims asserted in this case, *i.e.*, the uniformity of the misrepresentations and omissions at issue, and the large number of investors similarly affected by the alleged wrongdoing. Moreover, the Parties have agreed to provisional certification of a Settlement Class, for settlement purposes only, which is defined as all Persons who purchased common stock of U.S. Auto pursuant to its February 9, 2007 Initial Public Offering ("IPO" or the "Offering") of 10 million shares of common stock, defined for purposes of this settlement as

---

[5] The standards for approving a settlement class are the same as those for approving a non settlement class except that a court need not consider the difficulties likely to be encountered in managing the class action. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-21 (1997).

purchasers between February 9, 2007 and March 20, 2007.  Excluded from the Class are Defendants, members of the immediate families of the Individual Defendants, current or former directors and officers of U.S. Auto and the legal representatives, heirs, successors, or assigns of any such excluded Person.  Also excluded from the Class are those Persons who timely and validly request exclusion from the Class pursuant to the Notice of Pendency and Proposed Settlement of Class Action. *See* Stipulation, ¶1.4.

In this instance, the Court is well within its authority to certify a class for settlement purposes since it can be demonstrated that the proposed class meets the four prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure – numerosity, commonality, typicality and adequacy of representation– and one of the three requirements of Rule 23(b).  *Amchem,* 521 U.S. at 621 ("The safeguards provided by the Rule 23(a) and (b) class-qualifying criteria, we emphasize, are not impractical impediments – checks shorn of utility – in the settlement class context.")

**H.     The Requirements of Rule 23(a) Are Satisfied**

The criteria for class certification are set forth in Rule 23(a):

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Courts liberally construe Rule 23 in favor of granting class certification

motions in class actions for violations of federal securities laws. *Yamner v. Boich*, No. C-92-20597, 1994 U.S. Dist. LEXIS 20849, *6 (N.D. Cal. Sept. 15, 1994) ("the Ninth Circuit favors a liberal use of class actions to enforce the federal securities laws") (citation omitted). As noted below, each of the requirements of Rule 23(a) are satisfied for the purposes of certifying the settlement class.

**1.    Rule 23(a)(1): The Members of the Settlement Class Are So Numerous That Joinder of All of Them Is Impracticable**

Rule 23(a)(1) requires that the Class be so numerous that joinder of all members is impracticable. For purposes of Rule 23(a)(1) "'impracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *See Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d909, 913-14 (9th Cir. 1964).  In addition, precise enumeration of the members of the settlement class is not necessary for plaintiffs to proceed as representatives of the settlement class in this matter.  *In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 679 (N.D. Cal. 1986); *A & J Deutscher Family Fund v. Bullard*, No. CV 851850, 1986 U.S. Dist. LEXIS 20054 (C.D. Cal. Sept. 22, 1986); *Weinberger v. Thornton*, 114 F.R.D. 599, 602 (S.D. Cal. 1986). Rather, "[a] reasonable estimate of the number of purported class members satisfies the numerosity requirement of Rule 23(a)(1)."  *In re Badger Mountain Irrig. Dist. Sec. Litig.*, 143 F.R.D. 693, 696 (W.D. Wash. 1992). Under this standard, classes consisting of just 25 members have been held large enough to justify certification.  *See In re Cirrus Logic Sec. Litig.*, 155 F.R.D. 654,

656 (N.D. Cal. 1994). The numerosity requirement of Rule 23 is generally assumed to have been met in class action suits involving nationally traded securities. *Id.*; *Freedman*, 922 F. Supp. at 398; *In re Amerifirst Sec. Litig.*, 139 F.R.D. 423, 427 (S.D. Fla. 1991).

During the Class Period, millions of U.S. Auto shares were traded. Common sense dictates that these shares were purchased by thousands of investors, making joinder impracticable. *In re Alco Int'l Group, Inc., Sec. Litig.*, 158 F.R.D. 152, 153-54 (S.D. Cal. 1994) ("[w]hether or not the Class numbers in the hundreds or in the thousands, joinder is clearly impractical where a large group of people, dispersed all across the country, are involved"); *see also In re Itel Sec. Litig.*, 89 F.R.D. 104, 111 (N.D. Cal. 1981) ("impracticability" occurs, as a presumptive matter, when the class membership reaches the 100-member mark). The numerosity requirement is met.

### 2.   Rule 23(a)(2): There Are Questions of Law or Fact Common to the Members of the Settlement Class

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Ninth Circuit has adopted a "common sense approach," holding that the commonality requirement is satisfied where, as here, plaintiffs have alleged a common "course of conduct" based on Defendants' statements and/or omissions:

> Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a Defendant's course of conduct

> is in its broad outlines actionable, which is not defeated by slight differences in class members' positions, and that the issue may profitably be tried in one suit.

*Blackie*, 524 F.2d at 902.

Here, the Complaint alleges a litany of issues of fact and law common to all members of the Class, including whether the Defendants violated the securities laws; whether the Prospectus and Registration Statement contained materially untrue statements or omissions; whether the facts alleged by the Lead Plaintiff were actionable under the securities laws; the extent (if any) to which various facts alleged by the Lead Plaintiff influenced the trading prices of U.S. Auto shares during the relevant period; the method for determining whether U.S. Auto shares were artificially inflated during the relevant period; the amount (if any) of such inflation; and the amount of damages (if any) that could be recovered at trial.  The claims of all members of the Class arise from a single alleged course of conduct and are all based on the same legal theories. The commonality requirement is met.

### 3.   Rule 23(a)(3): The Claims of the Lead Plaintiff Are Typical of the Claims of the Settlement Class

Rule 23(a)(3) requires that the claims of the representative parties must be typical of the claims of the class they seek to represent.  As the court explained in *United Energy*:

> A Plaintiff's claim is typical of the claims of the proposed class members if it is aligned with the claims of other class members. The Plaintiff's claim must arise from the same event or course of conduct giving rise to the claims of other class members. Furthermore, the claims must be based on the same legal theory.

> *In re Unioil Securities Litigation*, 107 F.R.D. 615, 620 (C.D. Cal.
> 1985). . .The theory behind this prerequisite is that a Plaintiff
> with typical claims will pursue her own self-interest and advance
> the interests of class members accordingly.

*United Energy*, 122 F.R.D. at 256.

The requirement of typicality does not mean that all claims must be identical or that plaintiffs must seek uniform damage awards. *Weinberger*, 114 F.R.D. at 603 ("[t]he test generally is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other Class members have been injured by the same course of conduct"). Factual differences do not defeat certification in securities actions where the claims arise from the same legal theory or theories. *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985); *In re AST Research Sec. Litig.*, No. CV 94-1370, 1994 U.S. Dist. LEXIS 20850, *7 (C.D. Cal. Nov. 10, 1994) ("[t]ypicality means that the claims or defenses of the proposed class representative must not 'differ significantly from the claims or defenses of the class as a whole'") (citing *In re Computer Memories Sec. Litig.*, 111 F.R.D. at 680). This suggests that typicality generally will be met if the commonality requirement is met.

Here, the claims of each Class member arise from the same alleged course of conduct, namely, the alleged misrepresentations, non-disclosures or otherwise, made by the Company during the Class Period. Like all members of the Class, Lead Plaintiff alleges that it purchased U.S. Auto shares during the Class Period and was

injured as a result of these material misstatements. Lead Plaintiff has standing to assert claims under the Securities Act of 1933 and bring this action on behalf of the Class.

Thus, Lead Plaintiff has the incentive to prove all of the elements of each cause of action which would be presented by the individual members of the Class were they to file individual actions. *See Oxford*, 199 F.R.D. at 123. Although the amount of damages suffered by each member of the Class will vary in accordance with his or her trades of U.S. Auto shares, it is axiomatic that "damages arising from a disparity in injuries among the plaintiff class does not preclude typicality." *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 87 (S.D.N.Y. 2001); *see also Visa II*, 280 F.3d at 139. The typicality requirement is met.

### 4.   Rule 23(a)(4): The Lead Plaintiff Will Fairly and Adequately Protect the Interests of the Members of the Settlement Class

Rule 23(a)(4), the adequacy of representation requirement, entails two showings: (1) the representative plaintiff's interests are not antagonistic to the other members of the settlement class; and (2) the representative plaintiff's counsel is qualified, experienced, and generally able to conduct the litigation.  *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978); *Cirrus Logic*, 155 F.R.D. at 657; *United Energy*, 122 F.R.D. at 257.

First, it is submitted that KGS and HBSS, Lead and Liaison Counsel for Lead Plaintiff, are preeminent law firms representing plaintiffs in securities class actions

in courts throughout the nation. These firms and their attorneys have extensive experience in successfully prosecuting such actions and have achieved significant results for their clients and for certified investor classes. This is demonstrated by the firms' resumes; annexed as Exhibits A and B to the Declaration of Kim E. Miller.

As discussed above, Lead Plaintiff's claims are typical because the allegedly misleading course of conduct by Defendants is common to all of the Class members. Questions of fact arising from these alleged activities are common to each Class member, as are questions of law regarding whether Defendants' activities violated the federal securities laws. *See, e.g., Deutsche Telekom*, 229 F. Supp. 2d at 282 (plaintiffs adequate where they, like other class members, purchased shares and were allegedly injured by false and misleading statements). There are no conflicts or antagonisms between the claims of Lead Plaintiff and those of the members of the Class. The adequacy of representation requirement is met.

## I. The Requirements of Rule 23(b)(3) Are Satisfied

In addition to meeting the prerequisites of Rule 23(a), proposed settlement classes must also satisfy one of the subdivisions of Rule 23(b). *Amchem*, 521 U.S. 591. Plaintiff seeks certification of a Settlement Class under subdivision (b)(3) of Rule 23, which states:

> (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

***

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

**1.      Common Questions Predominate**

It has already been demonstrated that there are questions of both law and fact which are common to the Settlement Class.  Common issues need only predominate.  Rule 23(b)(3) does not require the total absence of any individual issues.  *In re Activision Sec. Litig.*, 621 F. Supp. 415, 429-30 (N.D. Cal. 1985).  As the Ninth Circuit commented in the landmark securities fraud case of *Blackie*, 524 F.2d at 902, "[t]he overwhelming weight of authority holds that repeated misrepresentations of the sort alleged here satisfy the 'common question' requirement."

There are no significant, let alone, predominant individual issues in this case.  Indeed, it is difficult to discern liability issues in this case that are not common to Members of the Settlement Class. Where, as here, Members of the Settlement Class are subject to the same alleged misrepresentations and omissions, and where it is alleged that Defendants' misrepresentations were part of a common course of conduct, courts routinely hold that common questions predominate and that class certification is appropriate.  *See, e.g.*, *Badger Mountain*, 143 F.R.D. at 701; *United Energy*, 122 F.R.D. at 256 and cases cited therein; *Unioil*, 107 F.R.D. at 622.  These issues are common to each Member of the Settlement Class, and they clearly predominate in this case.

## 2.      A Class Action Is Superior to Numerous Individual Actions

The class action device is also a superior method for resolving Plaintiffs' claims in this action. Courts have long recognized that the class action is not only a superior method, but also may be the only feasible method to fairly and efficiently adjudicate a controversy involving a large number of purchasers of securities injured by securities law violations. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("[m]ost of the Plaintiffs would have no realistic day in court if a class action were not available"). As the Ninth Circuit has stated:

> [A] class action would plainly be 'superior to other available methods for the fair and efficient adjudication of the controversy,' because the 'interest of members of the class in individually controlling the prosecution . . . of separate actions,' is minimal, while the 'desirability . . . of concentrating the litigation of claims in the particular forum,' is compelling. Fed. R. Civ. P. 23 (b)(3). Indeed, it is difficult to imagine a case where class certification would be more appropriate.  Without it, thousands of identical complaints by former MCA shareholders would have to be filed -- the very result the class action mechanism was designed to avoid.

*Epstein*, 50 F.3d at 668.  *See also Wehner v. Syntex Corp.*, 117 F.R.D. 641, 645 (N.D. Cal. 1987) ("[i]n practical terms, Plaintiffs in the instant case may be economically precluded from bringing separate suits and thus be barred access to the judicial system.  Maintenance of a class action suit would provide all litigants with their 'day in court' without overburdening the judicial system with a multiplicity of lawsuits").

The alternative to certifying a Settlement Class would be to unleash hundreds,

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

if not thousands, of individual actions into the judicial system (which could result in varying adjudications of liability) or risk that many class members would be unable to seek redress because they could not afford to proceed on an individual basis as plaintiffs. The cost and expense of such individual actions, when weighed against the individual recoveries obtainable, would be prohibitive.

Further, certification of the Settlement Class is the superior method to facilitate the resolution of the claims of Lead Plaintiff and the other members of the Class. Without the settlement class device, the Defendants could not obtain a Class-wide release, and therefore would have had little, if any, incentive to enter into the Settlement. Moreover, certification of Class for settlement purposes will allow the Settlement to be administered in an organized and efficient manner. Courts have repeatedly affirmed the superiority of class actions in securities cases on the foregoing grounds. *See, e.g.*, *In re MDC Holdings Sec. Litig.*, 754 F. Supp. 785, 807 (S.D. Cal. 1990); *Badger Mountain*, 143 F.R.D. at 696; *United Energy*, 122 F.R.D. at 258; *Weinberger v. Thornton*, 114 F.R.D. at 605. This is true even when the parties seek class certification only for the purposes of settlement. *Amchem*, 521 U.S. at 620. Resolution of the claims against the Defendants through the proposed Settlement Class is plainly superior to any other available method of resolution.

For all of the foregoing reasons, this Court should find that this Settlement Class meets the requirements of both 23(a) and 23(b) and should provisionally

certify the Settlement Class.[6]

**J.       Lead Counsel Should Be Appointed Class Counsel Under Rule 23(g)**

Rule 23(g)(1)(A) states that "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1)(A). Lead Counsel satisfies the requirements of Rule 23(g) and should be appointed as Class Counsel. As discussed above, KGS has fairly and adequately represented the Class, and will continue to do so. Proposed Class Counsel are knowledgeable about the applicable law and experienced in handling class actions, have performed substantial work in vigorously pursuing the Class' claims here and have committed substantial resources to representing the Class. *See* Fed. R. Civ. P. 23(g)(1)(B).

**K.       The Court Should Approve the Form of the Notices and Plan for Providing Notice to the Class**

The Court should also approve the form and content of the proposed Notice and Summary Notice. *See* Exhibits B-1 and B-3 annexed to the proposed Preliminary Approval Order and Stipulation. Each is written in clear, straight-forward language, and the Notice uses a format that clearly sets out the relevant information. Consistent with Rules 23(c)(2)(B) and 23(e)(B), the Notice objectively and neutrally apprises members of the Class of the nature of the action, the definition of the Class sought to be certified, the claims and issues, that members of the Class may enter an appearance through counsel if desired, that the Court will exclude from the Class any

---

[6] The Stipulation of Settlement provides that the Defendants reserve their right to contest and challenge certification of the Class on any and all grounds in the event that the settlement is not approved.

1   member of the Class who requests exclusion (and sets forth the procedures and

2   deadline for doing so), and the binding effect of a judgment on members of the Class

3   under Rule 23(c)(3).

4

5       The Notice also satisfies the separate disclosure requirements imposed by the

6   PSLRA. The Notice (i) states the amount of the settlement proposed to be distributed

7   to the parties, determined in the aggregate and on an average per share basis; (ii)

8   provides a statement from each party concerning the issues about which the parties

9   disagree; (iii) states the maximum amount of attorney's fees and expenses (both on

10  an aggregate and average per share basis) that Lead Plaintiff's Counsel will seek,

11  with a brief explanation supporting such fees and expenses; (iv) provides the names,

12  addresses, and a toll-free telephone number for Lead Counsel, who will be available

13  to answer questions from members of the Class; (v) provides a brief statement

14  explaining the reasons why the parties are proposing the Settlement; and (vi)

15  includes a cover page summarizing all of this information. *See* 15 U.S.C. § 78u-

16  4(a)(7); *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 184-85

17  (S.D.N.Y. 2003) (discussing PSLRA notice requirements and approving notice

18  where "cover page" was actually two pages).

19

20      Additionally, both of the Notices disclose the date, time and location of the

21  Settlement Hearing and the procedures and deadlines for the submission of Proof of

22  Claim forms and objections to any aspect of the Settlement, Plan of Allocation, or

23  attorney's fees and expenses to be sought by counsel. These disclosures are thorough

and should be approved by the Court. *See In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 175 (E.D. Pa. 2000) (approving notice that stated the settlement terms and plan of allocation, estimated potential recovery at trial, revealed maximum request for attorney's fees and identified contact information of relevant attorneys).

Rule 23(c)(2)(B) requires certified classes to receive "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e)(B) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Fed. R. Civ. P. 23(e)(B). The proposed notice plan readily meets these standards. Lead Plaintiff and its Counsel, through an experienced settlement and claims administrator, Complete Claims Solutions, will cause the Notice, including the Plan of Allocation and Proof of Claim form to be sent by first class mail to every member of the Class who can be identified through reasonable effort. This will be accomplished principally by using record holder data to be produced by the transfer agent for U.S. Auto, and by reaching out to broker-dealers for the last-known names and addresses of potential members of the Class and shareholders. The Summary Notice, which summarizes the essential Settlement terms and informs readers how to obtain the full Notice, will be published once in a widely circulated national business-oriented publication or wire service on or before the date specified in the Notice Order.

This notice program clearly satisfies the requirements of Rule 23 and due process and should be approved by the Court. *See Barone*, 2005 WL 2009882, at *6; *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) ("It is beyond dispute that notice by first class mail ordinarily satisfies rule 23(c)(2)'s requirement that class members receive 'the best notice practicable under the circumstances.'")

## IV.    CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that this Court preliminarily certify the proposed Class, grant preliminary approval to the proposed Settlement, approve the forms and methods of notice, and issue the proposed Preliminary Approval Order submitted herewith.

Repectfully submitted,

Dated: May 1, 2008                          KAHN GAUTHIER SWICK, LLC

                                            /s/ *Kim E. Miller*
                                            Kim E. Miller

                                            12 E. 41st Street, 12th Floor
                                            New York, NY  10017
                                            Tel:  (212) 696-3730
                                            Fax:  (504) 455-1498

                                            Lewis S. Kahn
                                            KAHN GAUTHIER SWICK, LLC
                                            650 Poydras Street, Suite 2150
                                            New Orleans, LA  70130
                                            Tel:  (504) 455-1400
                                            Fax:  (504) 455-1498

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Lead Counsel for Proposed Lead Plaintiff, Sasco Investments, LP and Proposed Lead Counsel for the Class*

Elaine T. Byszewski
HAGENS BERMAN SOBOL SHAPIRO LLP
700 South Flower Street, Suite 2940
Los Angeles, CA 90017
Tel: (213) 330-7149
Fax: (213) 330-7152

Reed R. Kathrein
HAGENS BERMAN SOBOL SHAPIRO, LLP
715 Hearst Ave., Ste. 202
Berkeley, CA 94710
Tel: (510) 725-3000
Fax: (510) 725-3001

*Liaison Counsel for Proposed Lead Plaintiff, Sasco Investments, LP and the Class*

**DECLARATION OF SERVICE**

I, the undersigned, declare:

That declarant is and was, at all times herein mentioned, a citizen of the United States and a resident of the County of Los Angeles, over the age of 18 years, and not a party to or interested in the within action; that declarant's business address is 700 South Flower Street, Suite 2940, Los Angeles, California 90017-4101.

On May 1, 2008, I served the foregoing document(s) described as:

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; DIRECTING NOTICE OF PENDENCY AND SETTLEMENT OF CLASS ACTION; AND SETTING HEARING DATE FOR FINAL APPROVAL OF SETTLEMENT AND FOR CERTIFICATION OF SETTLEMENT CLASS**

[X]   **BY MAIL**

By placing a true copy thereof enclosed in seal envelopes address as follows:  **See Attached Service List**.  I am readily familiar with the firm's practice for collection and processing correspondence for mailing.  Under that practice, this document will be deposited with the U.S. Postal Service on this date with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.

[**X**]       **BY CM/ECF NOTIFICATION:**  By causing the above listed document to be electronically filed through the Court's CM/ECF system and causing an automatic notice of said filing to be sent to the recipients on the attached service list:  **SEE ATTACHED SERVICE LIST**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 1st day of May, 2008, at Los Angeles, California.

_____/s/ *Kevin G. Acosta*_____

KEVIN G. ACOSTA

## SERVICE LIST

The Honorable George H. Wu
United States District Court
Central District of California
312 No. Spring St., Courtroom 10
Los Angeles, CA 90012
*Via Hand Delivery*

Evan J. Smith
BRODSKY AND SMITH
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Telephone:  310-300-8425
esmith@brodsky-smith.com

Paul J. Geller
PAUL J. GELLER LAW OFFICES
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone:  (561) 750-3000

Jonathan M. Stein
JONATHAN M. STEIN LAW OFFICES
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone:  (561) 750-3000

Luke Liss
WILSON SONSINI GOODRICH AND
ROSATI
650 Page Mill Road
Palo Alto, CA 94304
Telephone:  (650) 565-3543
lliss@wsgr.com

Darren J. Robbins
Catherine J. Kowalewski
David C. Walton
COUGHLIN STOIA GELLER RUDMAN
AND ROBBINS
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone:  (619) 231-1058
denisey@lerachlaw.com

Steven S. Wang
BRODSKY AND SMITH
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Telephone:  (310) 300-8425

Robert A. Sacks
SULLIVAN & CROMWELL
1888 Century Park E
Ste 2100
Los Angeles, CA 90067
Telephone:  (310) 712-6600
sacksr@sullcrom.com

Elaine T. Byszewski
HAGENS BERMAN SOBOL SHAPIRO
LLP
700 South Flower St., Suite 2940
Los Angeles, CA 90017
Telephone:  (213) 330-7149
elaine@hbsslaw.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO
LLP
1301 Fifth Ave., Suite 2900
Seattle, WA 98101
Telephone:  (206) 623-7292
Facsimile:   (206) 623-0594

1

2   Reed. R. Kathrein
    HAGENS BERMAN SOBOL SHAPIRO
3   LLP
    715 Hearst Avenue, Suite 202
4   Berkeley, CA 94710
    Telephone:  (510) 725-3000
5   reed@hbsslaw.com
6
7   Kim E. Miller
    KAHN GAUTHEIR SWICK, LLC
8   12 E. 41st St., Suite 1200
    New York, NY 10017
9   Telephone:  (212) 696-3730
    Facsimile:   (212) 455-1498
10  Kim.miller@kgscounsel.com
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

steve@hbsslaw.com

Lewis S. Kahn
KAHN GAUTHEIR SWICK, LLC
650 Poydras St., Suite 2150
New Orleans, LA 70130
Telephone:  (504) 455-1400
Facsimilie:  (504) 455-1498
Lewis.kahn@kgscounsel.com